## PEOPLE v WOLFF

### DECISION OF THE COURT

1. ROBBERY—ROBBERY ARMED—PLEA OF GUILTY—VACATING PLEA—
   ROBBERY UNARMED.

   Defendant's conviction of robbery armed is reversed and he is
   remanded to the trial court for sentencing on his original plea
   of guilty to robbery unarmed which is reinstated where that
   plea was properly accepted and it was vacated by the trial
   judge after he had said he would accept it but before sentence
   was imposed.

### SEPARATE OPINION
T. M. KAVANAGH, C. J., AND SWAINSON AND WILLIAMS, JJ.

See headnote 8.

2. CRIMINAL LAW—PLEA OF GUILTY—VACATING PLEA—STATUTES.

   *Statute providing that a guilty plea shall be vacated when the
   trial judge shall have reason to doubt the truth of such plea is
   not satisfied where no valid reason is shown in the transcript of
   the sentencing proceedings and the only additional data pre-
   sented to the trial judge was defendant's statement that, on the
   same facts as those stated when the plea of guilty was accepted,
   he no longer felt that he was "really" guilty (MCLA 768.35).*

3. CRIMINAL LAW—PLEA OF GUILTY—TRUTH OF PLEA.

   *Since "the truth" of a plea of guilty depends upon whether or not
   the defendant did in fact commit certain acts constituting a
   crime, that defendant feels what he did was or was not a crime
   is not relevant.*

### REFERENCES FOR POINTS IN HEADNOTES
[1–6, 8–15, 17–21, 24] 21 Am Jur 2d, Criminal Law §§ 459, 484–496.
[2–5] 21 Am Jur 2d, Criminal Law § 484 *et seq.*
[7] 21 Am Jur 2d, Criminal Law §§ 525–530, 533.
[16] 16 Am Jur 2d, Constitutional Law § 5.
[22, 23] 21 Am Jur 2d, Criminal Law § 494.

4. Criminal Law—Plea of Guilty—Truth of Plea.

*Just as the defendant saying he was guilty without relating the facts necessary to constitute a crime does not satisfy finding the truth of a plea of guilty, so a defendant's saying he does not really feel guilty after relating the commission of acts that do constitute a crime does not disestablish the truth of the plea, if the defendant still wants to plead guilty.*

5. Criminal Law—Plea of Guilty—Truth of Plea—Statutes.

*Defendants do not have the right to insist on acceptance of guilty pleas under the statute regarding the acceptance of such a plea; in those cases where the trial judge is presented with objective facts which would legitimately cause him to doubt the truth of a plea of guilty, that statute commands him not to accept the plea and the dispositive consideration is whether or not the facts as found by the judge indicate the defendant was guilty; it is the trial judge, not the defendant, who is to make the determination of whether there are sufficient facts and allegations under law to justify a plea of guilty (MCLA 768.35).*

6. Criminal Law—Plea of Guilty—Truth of Plea—Vacating Plea —Remand—Sentences.

*Trial judge, having on the record no reason to doubt the truth of defendant's plea of guilty, improperly vacated the plea, and defendant should be remanded for sentencing on the original plea of guilty.*

Separate Opinion

T. G. Kavanagh, J.

7. Criminal Law—Plea of Guilty—Sentence—Conviction.

*A sentence is the judgment imposed on a prior conviction and the conviction has viability entirely apart from the validity of the sentence.*

8. Robbery—Plea of Guilty—Voluntariness—Statutes—Court Rules.

*An adequate factual basis for acceptance of a plea of guilty of robbery unarmed was established where the judge questioned the defendant at length about his understanding of the charge, of his rights at trial, and the voluntariness of his plea and the defendant acknowledged that he had driven the robbers to the scene of the crime and that he knew they were going to commit a robbery; the judge adequately performed all the duties imposed on him by the statute and court rule regarding the*

acceptance of a plea of guilty (MCLA 750.530, 768.35; GCR 1963, 785.3[2]).

9. CRIMINAL LAW—PLEA OF GUILTY—WITHDRAWAL OF PLEA.

*The court* may *set aside a properly accepted plea of guilty on the motion of the accused before or after sentence is imposed; this is not an unqualified right however and, even before sentencing, the failure of the accused to present a "persuasive reason" for withdrawing his plea may justify the court in refusing to allow him to withdraw it.*

10. ROBBERY—PLEA OF GUILTY—SETTING ASIDE PLEA.

*Statement by defense counsel, at the hearing to impose a sentence, that if the judge would question another defendant "you will find that they did meet after that and divided the proceeds of the robbery" and the defendant's statement that "I was in the house when they divided the proceeds", made after the court had said it could not accept the plea of guilty previously accepted, are consonant only with the conclusion that the judge's action in setting aside the plea of robbery unarmed was against the defendant's wishes (MCLA 750.530).*

11. CRIMINAL LAW—PLEA OF GUILTY—STATUTES—PUBLIC POLICY.

*The Michigan Supreme Court from the beginning has regarded the statute setting forth procedure for the acceptance of a plea of guilty as expressive and implementive of a public policy to protect the accused from making an unwary or coerced plea (MCLA 768.35).*

12. CRIMINAL LAW—PLEA OF GUILTY—STATUTES—TRUTH OF PLEA.

*Statutory stricture on a judge to satisfy himself of the "truth of the plea" goes to the circumstances of the plea of guilty, the state of mind of the defendant; and the obligation imposed on the judge to establish that the plea is a true plea also requires that he establish a factual basis for convicting the defendant of the charge to which the plea is offered or to some greater crime (MCLA 768.35).*

13. CRIMINAL LAW—PLEA OF GUILTY—SETTING ASIDE PLEA.

*No reason appears to require a judge to set aside a plea of guilty against the wishes of a defendant offering it because he expresses doubts about his guilt.*

14. ROBBERY—PLEA OF GUILTY—VACATING PLEA—APPEAL AND ERROR.

*Judge properly accepted a plea of guilty to the charge of unarmed robbery and he was not obligated to vacate it and indeed it was*

error to set it aside where the admitted facts support an inculpatory inference; defendant's assertion that such is not a correct inference does not preclude the judge from determining that the defendant freely, understandingly and knowingly offers the plea (MCLA 750.530).

### DISSENTING OPINION

### T. E. BRENNAN and M. S. COLEMAN, JJ.

15. CRIMINAL LAW—PLEA OF GUILTY—VACATING PLEA—SENTENCES.

*A judge is not foreclosed from vacating a plea of guilty, if he finds facts after the initial recording of the guilty plea which lead him to the conclusion that the defendant may not be guilty; he need not proceed to sentence the defendant regardless of the new facts.*

16. CONSTITUTIONAL LAW—PRACTICAL CONSEQUENCES.

*The United States Constitution is concerned with practical consequences.*

17. CRIMINAL LAW—PLEA OF GUILTY—SENTENCES.

*The practice in Michigan in accepting a plea of guilty was not affected by the ruling in a decision of the United States Supreme Court that an individual may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.*

18. CRIMINAL LAW—PLEA OF GUILTY—STATES.

*The states may bar their courts from accepting guilty pleas from any defendants who assert their innocence.*

19. CRIMINAL LAW—PLEA OF GUILTY—SENTENCES—VACATING PLEA—COURT RULES—STATUTES.

*It would be impractical precedent and repugnant to the cause of justice to hold that a judge must still pronounce sentence, if before sentencing, a defendant changes his story, or other evidence is available to indicate that (1) one element of the crime might be found missing at a full trial of fact, or (2) the defendant is taking the blame for someone else, or (3) his mental state becomes suspect, or if for any other of many possible newly discovered reasons the judge might feel the defendant possibly not guilty; Michigan court rules and statutes mandated, as of May 8, 1969, that the judge vacate the plea before sentencing if he has doubt as to the defendant's guilt (MCLA 768.35; GCR 1963, 785.3).*

20. CRIMINAL LAW—PLEA OF GUILTY—VACATING PLEA—SENTENCES—
CONSTITUTIONAL LAW—DUE PROCESS.

*Vacating defendant's plea of guilty without his consent before
sentence and after additional testimony cast doubt on his guilt
was not a violation of due process of law.*

21. CRIMINAL LAW—PLEA OF GUILTY—VACATING PLEA—STATUTES—
CONSTITUTIONAL LAW.

*Statute requiring a judge to vacate a plea of guilty, direct a plea
of not guilty to be entered and order a trial of the issue thus
formed whenever he shall have reason to doubt the truth of
such plea of guilty is constitutional (MCLA 768.35).*

22. CRIMINAL LAW—PLEA OF GUILTY—VACATING PLEA—LESSER OF-
FENSE—GREATER OFFENSE.

*Parties return to their original posture, and the defendant is
properly charged on the original offense, when, because of
doubt of guilt, his plea of guilty to a lesser offense is vacated.*

23. CRIMINAL LAW—ACQUITTAL—VERDICT—LESSER OFFENSE—
GREATER OFFENSE.

*A jury acquittal or verdict for a lesser offense is regarded as an
implicit acquittal of the greater offense.*

24. CRIMINAL LAW—PLEA OF GUILTY—VACATING PLEA—SENTENCE—
ROBBERY ARMED—ROBBERY UNARMED—COURT RULES—PROSPEC-
TIVE APPLICATION.

*Decision of the Michigan Supreme Court affirming defendant's
conviction of robbery armed where the trial court had vacated
defendant's plea of guilty of robbery unarmed without defend-
ant's consent before sentence and after additional testimony
cast doubt on his guilt is limited to the time prior to June 1,
1973, the effective date of the amendment to the court rule
regarding a plea of guilty (GCR 1963, 785).*

Appeal from Court of Appeals, Division 1, V. J.
Brennan, P. J., and Levin and Targonski, JJ., de-
nying application for leave to appeal from Record-
er's Court of Detroit, Elvin L. Davenport, J. Sub-
mitted January 4, 1973. (No. 7 January Term
1973, Docket No. 53,896.) Decided June 18, 1973.

Robert Wolff was convicted of robbery armed.
Complaint for habeas corpus treated as an applica-

tion for delayed appeal and denied by order of the Court of Appeals for lack of merit. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Leonard Meyers,* Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *Judith K. Munger,* Assistant Appellate Defender), for defendant on appeal.

WILLIAMS, J. *(to reverse and remand).* I agree with the reasoning of my Brother T. G. KAVANAGH that the original guilty plea of April 7th was in fact properly "accepted".

But, regardless of whether MCLA 768.35; MSA 28.1058 is or is not mandatory, as my Sister MARY S. COLEMAN holds, its provisions are not satisfied in the instant case. The statute provides that a guilty plea shall be vacated when the trial judge "shall *have reason* to doubt the truth" of such plea. (Emphasis added.) No valid reason is shown in the transcript of the proceedings of May 8, 1969.

The only additional data presented to the trial judge was defendant's statement that, on the same facts, he no longer felt that he was "really" guilty. Since "the truth" of the plea depends upon whether or not the defendant did in fact commit certain acts constituting a crime, that defendant feels what he did was or was not a crime is not relevant. Just as the defendant saying he was guilty without relating the facts necessary to constitute a crime does not satisfy finding the truth of a plea, so a defendant's saying he does not really

feel guilty after relating the commission of acts that do constitute a crime does not disestablish the truth of the plea, if the defendant still wants to plead guilty. I would like to make it very clear, unlike my Brother Kavanagh's opinion, that defendants *do not* have the right to insist on acceptance of guilty pleas under MCLA 768.35. In those cases where the trial judge is presented with objective facts which would legitimately cause him to doubt the truth of a plea of guilty, MCLA 768.35 commands him not to accept the plea. The dispositive consideration is whether or not the facts as found by the judge indicate that defendant was guilty. It is the trial judge, not the defendant, who is to make the determination of whether there are sufficient facts and allegations under law to justify a plea of guilty. *People v Taylor,* 387 Mich 209, 224 (1972). The facts upon which the trial judge acted in vacating defendant's guilty plea were no less compelling of guilt than those facts elicited at the original hearing. Indeed, aside from defendant's expressed reversal of his feelings of culpability, the facts are identical. Thus the trial judge, having on the record no "reason to doubt the truth of such plea of guilty", improperly vacated that plea.

I would therefore vote to reverse. Defendant should be remanded to recorder's court for sentencing on the original plea of guilty, now reinstated, to robbery unarmed.

T. M. Kavanagh, C. J., and Swainson, JJ., concurred with Williams, J.

T. G. Kavanagh, J. *(separate opinion).* This case and the case of *People v McMiller* reported 389 Mich 425, were submitted together so that we might consider the matter of setting aside a plea

of guilty and retrial on a higher offense arising out of the same transaction.

In this case the plea was vacated *sua sponte* by the judge after he said he would accept it but before he had imposed sentence.

In *McMiller* the plea was overturned on appeal after sentence.

Defendant Robert William Wolff was arrested on November 16, 1968 and charged with aiding and abetting an armed robbery.[1] On April 7, 1969 he offered a plea of guilty to the reduced charge of robbery unarmed.[2]

After ascertaining defendant's understanding of the charge and voluntariness of his plea, the following colloquy took place:

"*The Court:* What did you do that makes you think that you are guilty?

"*The Defendant:* I drove the participants and let them out of the car.

"*The Court:* Are you saying that a robbery occurred on September 8 at 2912 Cochrane, a robbery of Adelbert Circle, and you drove the get-away car for that robbery?

"*The Defendant:* Not the get-away car. I drove them to the scene.

"*The Court:* What else did you do?

"*The Defendant:* I left.

"*The Court:* Did you know that they were going to commit a robbery?

"*The Defendant:* Yes, sir.

"*The Court:* You knew it?

"*The Defendant:* Yes, sir.

"*The Court:* Did they have a gun?

"*The Defendant:* There was a gun there, I believe.

"*The Court:* What did you do, discuss it with someone else—was it one or two that you drove there?

---

[1] MCLA 750.529; MSA 28.797.

[2] MCLA 750.530; MSA 28.798.

"*The Defendant:* I drove three men there besides myself.

"*The Court:* Did you have a discussion about this robbery before you drove them over there?

"*The Defendant:* No. They asked me to drive them there. It is right in my neighborhood.

"*The Court:* So you drove them over there?

"*The Defendant:* They are all from the same neighborhood.

"*The Court:* But you had a discussion about the robbery before you drove them?

"*The Defendant:* They had a discussion in the car after I had stopped there.

"*The Court:* And before you drove them you knew there was going to be a robbery?

"*The Defendant:* Yes, sir. I knew there was going to be a robbery.

"*The Court:* All right. I will accept the plea of guilty and refer the defendant to the Probation Department for pre-sentence investigation, and set May 7 for date of sentence; 9:00 a.m. in the morning. Bond continued."

In his interview with the presentence investigator from the probation department the defendant made the following statement:

"On the day this crime was committed I had taken off from work and went over to pick up Edwin Uphan and Ray Martin. I had known both of these fellows before. We then picked up one other fellow and while sitting in the car talking near Butternut and Cochran the fellows began to talk about robbing a store. I got angry and asked them to get out of my car. I then drove away and later that day I heard that this confectionery store was robbed. After that I left the state. I pleaded guilty to Robbern [sic] Not Armed because I did not feel my lawyer would fight the Robbery Armed case for me."

On May 8, 1969, defendant appeared before the trial court for sentencing. The court questioned

the defendant about his statements to the court on
April 7th and then said:

*"The Court:* * * *

You indicate from what you tell the probation officer,
taking in connection with what you said there at the
time of the plea, that you don't have any guilt in this
matter at all.

*"The Defendant:* Not really.

*"The Court:* I don't know why you wasted the Court's
time and pled guilty.

*"The Defendant:* I was not trying to waste the Court's
time.

*"The Court:* What were you doing?

*"The Defendant:* In a way I felt I had some guilt
because I knew they were going to pull off a crime. But
as far as out and out extent of armed robbery, no.

        *   *   *

*"The Court:* I cannot accept his plea. * * *

*"Counsel [for defendant]:* Thank you your Honor. If
you question Mr. Upham [another defendant] you will
find that they did meet after that and divided the
proceeds of the robbery.

*"The Court:* I know that, but he does not admit that.
He says he did not get any of the proceeds.

*"The Defendant:* I was in the house when they di-
vided the proceeds.

*"The Court:* You were in the car also?

*"The Defendant:* I was in the car at the start, yes, sir,
but after, nor during or after.

*"The Court:* You didn't take any of the money either,
you were just present?

*"The Defendant:* Yes, sir, that is right.

*"The Court:* And you indicate in your statement to
the court that you were present but you did not receive
any of the money?

*"The Defendant:* Yes, sir.

*"The Court:* Well, presence is not enough unless the
jury finds that there was something else you did. Maybe
driving the car was enough, but that is a fact for either

a judge without a jury or a jury, but I am not going to accept his plea."

In order to decide the ultimate questions raised by this case it is necessary first to decide several subsidiary questions:

1. *Was the guilty plea in this case in fact accepted?*

At the April 7th arraignment the court concluded:

"All right. I will accept the plea of guilty and refer the . defendant to the Probation Department for presentence investigation, and set May 7 for date of sentence * * * ."

We are not persuaded by the people's argument the judge had not accepted the plea at the April 7th arraignment because at the May 8th proceeding he said: "I cannot accept his plea" and "I am not going to accept his plea."

The argument that a plea is not "finally" accepted until sentence is passed is based on a concept that is at odds with decisions of this Court which have held that sentence is the judgment imposed on a prior conviction and the conviction has viability entirely apart from the validity of the sentence. *People v Adams,* 95 Mich 541, 542–543 (1893); *People v Burridge,* 99 Mich 343 (1894).

2. *Was the plea properly accepted?*

This question can be answered only by deciding whether there was adequate compliance with the statute[3] and court rule.[4]

The judge questioned the defendant at length about his understanding of the charge and of his rights at trial and the voluntariness of his plea.

[3] MCLA 768.35; MSA 28.1058.

[4] GCR 1963, 785.3(2).

The defendant acknowledged that he had driven the robbers to the scene of the crime and that he knew they were going to commit a robbery. This established an adequate factual basis for acceptance of the plea.

We conclude that before the judge said that he would accept the plea he had adequately performed all the duties imposed on him by the statute and court rule. The plea was properly accepted.

3. *May a plea that is properly accepted be set aside?*

The court *may* set aside a properly accepted plea on the motion of the accused before or after sentence is imposed. This is not an unqualified right however. Even before sentencing, the failure of the accused to present a "persuasive reason" for withdrawing his plea may justify the court in refusing to allow him to withdraw it. *People v Zaleski,* 375 Mich 71 (1965).

What concerns us however in this case is whether the judge may set aside a properly accepted plea against the wishes of the accused.

Because no express objection to the court's action here is found in the transcript, it is suggested that the accused acquiesced in it. We do not think that is a legitimate conclusion from a fair reading of the proceedings on May 8th.

The statement by defense counsel: "If you question Mr. Upham [another defendant] you will find that they did meet after that and divided the proceeds of the robbery"; and the defendant's statement: "I was in the house when they divided the proceeds", made after the court had said it could not accept the plea, are consonant only with the conclusion that the judge's action was against the defendant's wishes.

This situation is comparable to that which pertained in *People v Shirk,* 383 Mich 180, 193 (1970) where Justice T. M. Kavanagh said:

"To require defense counsel to mouth a collocation of words which could be formally labeled an objection * * * would exalt form over substance."

We are satisfied that the judge's action here was over the defendant's sufficiently evidenced objection, and the propriety of it can be determined only by considering the letter and spirit of MCLA 768.35 and GCR 1963, 785.3.

4. *What is the effect of the provision in the statute: "[W]henever said judge shall have reason to doubt the truth of such plea of guilty it shall be his duty to vacate the same"?*

Our statute is a reenactment of and in all material respects identical to 1875 P.A. 99.

Shortly after its original enactment, Justice Campbell discussed the statute in *Edwards v The People,* 39 Mich 760, 762–763 (1878) wherein he said:

"It is contrary to public policy to have any one imprisoned who is not clearly guilty of the precise crime charged against him, and it is equally contrary to policy and justice to punish any one without some regard to the circumstances of the case. By confining this statute to informations and not extending it to indictments, it is easy to see that the Legislature thought there was danger that prosecuting attorneys, either to save themselves trouble, to save money to the county, or to serve some other improper purpose, would procure prisoners to plead guilty by assurances they have no power to make of influence in lowering the sentence, or by bringing some other unjust influence to bear on them. It is to be presumed they had evidence before them of serious abuses under the information

system which in their judgment required checking by stringent measures.

"Every one familiar with the course of criminal justice knows that those officers exercise very extensive and dangerous powers, that in the hands of an arbitrary or corrupt man are capable of great abuse. And unless the general impression is wrong, great abuses have been practiced by this very device of inveigling prisoners into confessions of guilt which could not be lawfully made out against them, and deceiving them concerning the precise character of the charges which they are led to confess. And it has also happened, as is generally believed, that by receiving a plea of guilty from a person whose offense is not aggravated, worse criminals who have used him for their purposes remain unpunished, because the facts which would convict them have not been brought out.

"This statute not only requires the judge to examine carefully into the facts of the case, which can require no less than a search into the depositions if they have been returned or similar evidence if they have not been taken, but also compels him to examine the prisoner himself concerning the circumstances which induced him to plead guilty."

From the discussion so soon after the passage of the act it is obvious that the Court from the beginning has regarded the statute as expressive and implementive of a public policy to protect the accused from making an unwary or coerced plea.

The promise of a lower sentence or other unjust influence—the inveigling of prisoners to confess when their guilt could not lawfully be proved—deceiving prisoners about the precise character of the charges—using the plea of one to absolve more serious offenders—these are the evils of the court concluded the Legislature was seeking to correct in enacting the statute.

The improper substitution of the non-adversary

procedure for the adversary trial was what was
sought to be forestalled by the statute.

Thus the "truth of the plea" comprehended the
validity of the basis for the charge and the circum-
stances prompting the accused's choice of eschew-
ing trial.

More recent cases have underscored the neces-
sity for determining a factual basis for the plea.
See *People v Barrows*, 358 Mich 267 (1959) and
*People v Shell*, 23 Mich App 593 (1970).

Doubt about the guilt of the accused whether
entertained by the judge or the accused himself
should not be considered in assaying the defend-
ant's choice of electing this non-adversary proce-
dure for determining it. The statutory stricture on
the judge to satisfy himself of the "truth of the
plea" goes to the circumstances of the plea, the
state of mind of the defendant. Has the defendant
been promised leniency or coerced into pleading
guilty? Was this a knowing, understanding—true
—plea? Does he know what the charge is? Does he
understand the incidents of the adversary proce-
dure for establishing guilt?

The obligation imposed on the judge to establish
that the plea is a true plea also requires that he
establish a factual basis for convicting the defend-
ant of the charge to which the plea is offered or to
some greater crime.

In *People v Bartlett*, 17 Mich App 205, 208–209,
211 (1969) Judge (now Justice) Levin said:

"Doubt as to the defendant's guilt, even if entertained
by the accused person himself, does not necessarily
preclude a trial judge from accepting a plea of guilty. If
the trial judge, after the direct questioning of the
defendant required by the court rule and *Barrows,*
ascertains that there is a factual basis for the plea, that
the plea is a truthful, honest plea of guilty to an offense

of which the accused person might well be convicted upon trial, then the truth of the plea has been reasonably ascertained.

\* \* \*

"A defendant who desires to plead guilty to a reduced charge but who entertains doubt as to his guilt should not be required to stultify himself to obtain the benefit of the opportunity to plead to the lesser charge. A rule of law which would require a person desiring to offer a plea of guilty to admit the inevitability of his conviction upon trial would require an accused person who thinks he has a defense but might well be convicted to either state to the court that which he does not conscientiously believe or possibly forego the very real benefit of 'copping out' to an offense carrying a shorter sentence than that of which he might well be convicted \* \* \* ."

Many situations come readily to mind in which a defendant may protest his innocence altogether and still offer to plead guilty intelligently, deliberately and freely.

A man accused of murder might well offer a plea to manslaughter if he were convinced a jury might not believe his claim of self defense or accident as opposed to the witnesses who would give testimony supporting malice and deliberation. *Cfr. North Carolina v Alford*, 400 US 25; 91 S Ct 160; 27 L Ed 2d 162 (1970).

A three-time loser protesting innocence might well prefer to plead to attempted breaking and entering instead of run the risk that a jury might believe the Vicar's direct evidence of his armed robbery over defendant's ex-cell mates' support of his claimed alibi.

In this very case defendant's willingness to plead to unarmed robbery was well advised as evidenced by the result—even giving full credit to his "exculpatory" statement to the presentence investigator.

So too with many situations wherein the charge

involves specific intent and the evidence against
the defendant is convincing. Many defendants
faced with serious charges, particularly those who
have criminal records, or who are found in incrim-
inating circumstances or who may be aware that
that alleged victims of the crime will testify
against them, may wish to plead guilty to a lesser
offense rather than face a possible heavy sentence
on conviction of a higher charge, despite their
honest belief in their innocence.

We are unable to find any authority for holding
that it was intended by the statute that a judge
must vacate an accepted plea if the defendant
expresses doubt about his guilt. Three cases were
suggested as requiring that result: *People v Street,*
288 Mich 406 (1939); *People v Banning,* 329 Mich 1
(1950); and *People v Morrison,* 348 Mich 88 (1957).

In *Street* the Court said at p 408:

"If the judge has reason to doubt the truth of such
plea of guilty, it becomes his duty, *sua sponte* to vacate
it and direct a plea of not guilty to be entered and order
a trial of the issue thus formed."

But that case involved a guilty plea that was
*withdrawn* on the defendant's motion and subse-
quent improper comment on it at trial.

. In *Banning,* this Court held that there was no
abuse of discretion in refusing permission to with-
draw under the circumstances of that case.

In *Morrison* the Court held that as a matter of
law the defendant's recitation of what he did did
not amount to an admission of guilt to the crime
charged, and negated his plea of guilty and under
the circumstances it became the duty of the trial
court to refuse to accept it.

The defendant's appeal in that case from the

denial of his motion for a "new trial" after sentencing asserted that he had not actually plead guilty to the offense set forth in the information. The Attorney General filed a brief in which he asserted that the defendant's statement of the facts negated his plea of guilty and it thereupon became the duty of the trial judge to vacate such plea. *Morrison* is no authority for the proposition that a judge must, against the wishes of the defendant, vacate a properly accepted plea—a plea to an offense of which the accused might well be convicted upon a trial.

In summary then, no reason appears to require a judge to set aside a plea against the wishes of a defendant offering it because he expresses doubts about his guilt.

On the contrary, reason would seem to say that a judge would encourage truthful answers to questions about the defendant's participation in the crime and the circumstances prompting the plea by assuring the defendant that truthful answers— even that he thinks he is innocent—would not necessarily require rejection of his plea. We believe this is a better way to avoid canned answers to canned questions.

Here, where the admitted facts support an inculpatory inference, the defendant's assertion that such is not a correct inference does not preclude the judge from determining that the defendant freely, understandingly and knowingly offers the plea.

In this case we are satisfied that the judge properly accepted the plea of guilty to the charge of unarmed robbery; that he was not obliged to vacate it and indeed that it was error to set it aside.

We have treated the question of double jeopardy

and retrial in *McMiller* so we do not address ourselves to it here.

The conviction herein on the charge of robbery armed is reversed, the order vacating the plea of guilty to the charge of robbery unarmed is set aside, the plea of guilty thereto reinstated and the defendant remanded to recorder's court for resentencing for that offense.

M. S. COLEMAN, J. *(dissenting)*. Robert Wolff was arrested on November 16, 1968, on the charge of aiding and abetting an armed robbery. On April 7, 1969, the prosecutor moved to amend the information by including a count of robbery unarmed. Defendant appeared on that day before Judge Robert E. DeMascio of the Recorder's Court of Detroit to plead guilty to the lesser offense of robbery unarmed. Defendant was questioned by the court regarding his participating in the offense and the voluntariness of his plea, and the judge then said, "I will accept the plea." The date for sentencing was set for May 8, 1969, and the defendant was referred to the probation officer for interviewing.

During the probation interview, the defendant "minimized" his guilt and at the time set for sentencing, the following colloquy took place:

*"The Court:* You indicate, from what you tell the probation officer, taken in connection with what you said there at the time of the plea, that you don't have any guilt in this matter at all.

*"The Defendant:* Not really.

*"The Court:* I don't know why you wasted the court's time and pled guilty.

*"The Defendant:* I was not trying to waste the court's time.

*"The Court:* What were you doing?

*"The Defendant:* In a way I felt I had some guilt because I knew they were going to pull off a crime. But as far as out and out extent of armed robbery, no."

After this exchange, the judge said:

*"The Court:* I cannot accept his plea. I shall set his plea aside and put the matter down for trial on the charge of robbery armed for aiding and abetting * * * . And you indicate in your statement to the court that you were present but you did not receive any of the money?

*"The Defendant:* Yes, sir.

*"The Court:* Well, presence is not enough unless the jury finds there was something else that you did. Maybe driving the car was enough, but that is a fact for either a judge without a jury or a jury, but I am not going to accept his plea."

Neither defendant nor his attorney consented or objected to this action.

On August 19, 1969, defendant was convicted in a non-jury trial of armed robbery and was subsequently sentenced to a term of 10 to 20 years. His motion for a new trial was denied and judgment was affirmed. On December 31, 1971, the Court of Appeals denied for lack of merit defendant's application for delayed appeal.

This Court granted leave to appeal on April 11, 1972. The relief sought is reinstatement of the plea to unarmed robbery or remand for resentencing for no more than the maximum for unarmed robbery or grant of a new trial.

As the defendant notes, the present issue is one of first instance.[1] In such cases, there is an ever-

[1] Michigan's new court rule as to guilty pleas (GCR 1963, 785.7) has been adopted since the initial writing of this opinion, and is prospective in application. The fact remains that 52% of all appeals from criminal cases to the Court of Appeals in 1972 resulted from pleas of guilty.

present temptation to generalize from the exception—an error by definition.

In essence, this case presents two principal questions: 1. Has the court denied defendant's right to due process of law by vacating his plea without his consent before sentence and after additional testimony cast doubt on defendant's guilt? 2. Does the double jeopardy clause[2] preclude prosecution for the greater offense when the trial court has entertained a plea of guilty in a separate count and has, before sentencing, vacated that plea for cause but without the consent of the accused?

Inherent in the first question stated above is another. Is our statute MCLA 768.35; MSA 28.1058, which *requires* the court to vacate the plea under these circumstances, unconstitutional? Although the judge may find facts after the initial recording of the guilty plea which lead him to the conclusion that the defendant may not be guilty, is he foreclosed from vacating the plea? Must he proceed to sentence the defendant regardless of the new facts? This Court holds "No".

The defendant argues the relevancy of *North Carolina v Alford,* 400 US 25; 91 S Ct 160; 27 L Ed 2d 162 (1970). This allegedly affords Mr. Wolff the right to be sentenced on his plea even though he

---

[2] US Const, Am V.

Const 1963, art 1, § 15.

This is applicable to the states through the Fourteenth Amendment. *See, Benton v Maryland,* 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969). The provision

" * * * was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense * * * . The underlying idea * * * is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v United States,* 355 US 184, 187; 78 S Ct 221; 2 L Ed 2d 199 (1957).

was believed by the judge to be innocent. If he had that right under the given circumstances, obviously there would be no need to go further.

Mr. Alford was indicted for first-degree murder and pled guilty to second-degree although he denied any guilt. A 6–3 majority held:

"[W]hile most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual * * * may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." (p 37.)

It should be added, however, that before accepting the guilty plea to second-degree murder, the *Alford* judge heard other witnesses who testified that, shortly before the killing, Alford took his gun from his house and stated that he was going to kill the victim. Later, he returned to the house and stated that he had carried out the killing. Alford testified that he was innocent but desired to plead guilty to second-degree murder to escape the possibility of a death sentence. He had a long prior record and was sentenced to 30 years imprisonment. The defendant appealed. The United States Supreme Court said:

"Although denying the charge against him, he nevertheless preferred the dispute between him and the State to be settled by the judge in the context of a guilty plea proceeding rather than by a formal trial. Thereupon, with the State's telling evidence and Alford's denial before it, the trial court proceeded to convict and sentence Alford for second-degree murder." (p 32.)

A sentence appears at p 37 of *Alford* which should

be noted with care: "[T]he Constitution is concerned with practical consequences * * * ."

In the present case the trial judge had before him the statutes, rules and case law of Michigan to the moment and the record indicates that he performed his duty accordingly. *Alford* had not yet been decided, nor would it have made any difference in this decision. The practice in Michigan was not affected by the ruling in *Alford.* In fact, that Court cited *Lynch v Overholser,* 369 US 705; 82 S Ct 1063; 8 L Ed 2d 211 (1962) in which it expressly refused to rule that the defendant had an absolute right to have his guilty plea accepted, but said there would have been no constitutional error had it been accepted.

Indeed, the Supreme Court in the *Alford* case holds that the states have an option in this matter:

"Our holding does not mean that the trial judge must accept every constitutionally valid guilty plea merely because a defendant wishes to so plead. A criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court * * * although the States may by statute or otherwise confer such a right. *Likewise, the States may bar their courts from accepting guilty pleas from any defendants who assert their innocence * * * ."* (Emphasis added.) *North Carolina v Alford, supra,* p 38.

Both by statute and rule, Michigan has enunciated the latter policy. GCR 1963, 785.3, asserts the practice in Michigan which was in effect at the time of the plea. This Court recently said in *People v Taylor,* 387 Mich 209, 224 (1972):

"The provision [in GCR 1963, 785.3] that 'the court shall examine the accused * * * and * * * shall ascertain that the plea was * * * understandingly * * * made' requires the judge to conduct such an examina-

tion as to show that what the defendant actually did was indeed a crime or otherwise he could not understandingly plead guilty. If what he did was actually not a crime, then if he pled guilty to it, it would not be an understanding plea."

Also, our Court has said:

"If the judge has reason to doubt the truth of such plea of guilty, it becomes his duty *sua sponte* to vacate it and direct a plea of not guilty to be entered and order a trial of the issue thus formed."[3]

By statute, Michigan also clarifies the difference between conviction after trial and conviction after a plea of guilty. It is not accidental that the subjects are approached in separate sections in close sequence. MCLA 768.33; MSA 28.1056 provides:

"When a defendant shall be acquitted or convicted upon any indictment for an offense, consisting of different degrees, he shall not thereafter be tried or convicted for a different degree of the same offense; nor shall he be tried or convicted for any attempt to commit the offense charged in the indictment or to commit any degree of such offense."

Then comes MCLA 768.35; MSA 28.1058 to provide for a guilty plea:

"Whenever any person shall plead guilty * * * it shall be the duty of the judge * * * *before pronouncing judgment or sentence upon such plea,* to become satisfied after such investigation as he may deem necessary for that purpose * * * that said plea was made freely,

---

[3] *People v Street,* 288 Mich 406, 408 (1939); *People v Banning,* 329 Mich 1, 6 (1950); *People v Morrison,* 348 Mich 88, 90 (1957); *People v Taylor,* 383 Mich 338, 360 (1970); Our cases indicate the judge would have been in error to accept defendant's plea under the circumstances of this case. *See, e.g. People v Barrows,* 358 Mich 267 (1959); *People v Williams,* 386 Mich 277 (1971).

with full knowledge of the nature of the accusation, and without undue influence. And whenever said judge shall have reason to doubt the truth of such plea of guilty, it shall be his duty to *vacate* the same, direct a plea of not guilty to be entered and order a trial of the issue thus formed." (Emphasis added.)

The stated practice in Michigan was clear.

Defendant suggests, however, that this pre-*Boykin* case must be tested against the dicta stated in *Boykin v Alabama,* 395 US 238; 89 S Ct 1709; 23 L Ed 2d 274 (1969):[4]

"A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment."

Although this case preceded *Boykin, supra,* and it is unreasonable to apply retroactively the dicta above, nonetheless, let us examine the words and probe the meaning, for they are important to both questions before the Court. First, the word "accept" does not appear at all, although arguments seem to marry the word "accept" to the words "guilty pleas". When, then, does a plea of guilty result in a "conviction"? According to the dicta, the conviction lies when "nothing remains but to give judgment and determine punishment."

The real villain in this case may be semantics. Too often the courts become involved in debate concentrating on manipulation of words and phrases, without concern for practical impact on

---

[4] *Also, Kercheval v United States,* 274 US 220, 223; 47 S Ct 582; 71 L Ed 1009 (1927), the Court said:

"A plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction. Like a verdict of a jury, it is conclusive. More is not required; the court has nothing to do but give judgment and sentence."

trial courts and practitioners. It seems prudent to keep in mind the realities of the usual plea-taking process before a conscientious judge. The defendant, his attorney (if any) and a prosecutor appear before the judge. The defendant pleads guilty and the judge inquires. In most cases, one can expect the defendant's story of his involvement in the alleged crime to coincide with the prosecutor's conclusion after investigation. If so, the judge might logically "enter," "record" or "accept" the plea on the testimony solely of the defendant. No one would have reason to doubt his veracity at that point. However, if before sentencing, the defendant changes his story, or other evidence is available to indicate that (1) one element of the crime might be found missing at a full trial of fact, as in this case, or (2) the defendant is taking the blame for someone else, or (3) his mental state becomes suspect, or if for any other of many possible newly discovered reasons the judge might feel the defendant possibly not guilty, it would be impractical precedent and repugnant to the cause of justice to hold that the judge must still pronounce sentence—innocent or not. To the contrary, Michigan court rules and statutes mandated as of the date of the taking of this plea that the judge vacate the plea before sentencing if he had doubt as to the defendant's guilt. His duty was clear.

This appears to be a humane conclusion. It also appears to be consistent with the philosophy and policy set forth in other decisions. In this case, Wolff and his attorney came before Judge DeMascio on May 8, 1969, at which time the judge refused to sentence and instead vacated the plea. There was no objection from defendant or his attorney. There was no objection when he went to

trial. The act of "vacating" rendered void the entire transaction.

This Court finds no violation of due process in this case. The Court finds MCLA 768.35 to be constitutional. The judge, having good cause to doubt the guilt of the defendant had the duty to vacate the plea before sentence according to Michigan practice then provided.

The plea having been vacated, the parties return to their original posture, and the defendant is properly charged on the original offense.[5]

Emphasis is given to the fact that the effect of this decision is limited to time prior to the effective date of the amended GCR 1963, 785.

The decision of the Court of Appeals is affirmed.

T. E. BRENNAN, J., concurred with M. S. COLEMAN, J.

LEVIN, J., did not sit in this case.

[5] This Court agrees with the findings that a *jury* acquittal or verdict for a lesser offense is regarded as an implicit acquittal of the greater offense. This is not such a case.