STATE of Wisconsin, Plaintiff-Respondent,

v.

Martin GARCIA, Defendant-Appellant-Petitioner.

Supreme Court

*No. 93–1754–CR. Oral argument January 25, 1995.—Decided May 10, 1995.*

(Also reported in 532 N.W.2d 111.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Michael T. Sullivan, Jr.,* Milwaukee.

For the plaintiff-respondent the cause was argued *Michael R. Klos,* assistant attorney general, with

whom on the brief was *James E. Doyle,* attorney general.

DAY, J. This is a review of an unpublished decision of the court of appeals that affirmed a judgment of conviction and orders denying postconviction relief entered by the circuit court for Milwaukee County, Honorable Robert W. Landry, Judge. Mr. Martin Garcia entered an *Alford* plea[1] as part of a plea agreement, and was convicted of attempted first-degree murder, sec. 939.32(1)(a), Stats., (1993–94), and injury by conduct regardless of life, sec. 940.23, Stats., (1993–94). Mr. Garcia asserts three claims: (1) *Alford* pleas should not be allowed in Wisconsin, (2) he was confused about the plea so the circuit court erroneously exercised its discretion when it found no fair and just reason to allow the plea to be withdrawn, and (3) a manifest injustice will occur if he is not allowed to withdraw the plea because it was involuntary and unknowing. We affirm.

## I. BACKGROUND

On June 27, 1987, Mr. Alejandro Tejeda and Mr. Juan Braun were shot on South Sixteenth Street in Milwaukee. As a result of the gun shot wounds, both victims were partially paralyzed. One was confined to a wheelchair. Garcia was charged with two counts of attempted first-degree murder for the shooting incident on August 15, 1987, and was served with a warrant by Detective Radomski (Radomski) in Iowa on

---

[1] An *Alford* plea is a guilty plea where a defendant pleads guilty to a charge but either protests his innocence or does not admit to having committed the crime. The plea derives its name from the United States Supreme Court's decision in *North Carolina v. Alford,* 400 U.S. 25 (1970).

851

August 20, 1987. Shortly thereafter, Garcia gave a statement to Radomski in which he confessed to the shooting.

Garcia waived his right to a preliminary hearing on August 27, 1987. Attorney Martin Kohler (Kohler), the third attorney to represent Garcia, was appointed on February 24, 1988. Some time before Kohler's appointment, the District Attorney offered the plea agreement which was eventually accepted.

Garcia told Kohler that "the people on the street" were telling him that the victims would "not show up" at his trial. However, on the day of trial, October 17, 1988, several witnesses to the shooting, including both of the victims, came to court. The State had flown one of the witnesses in from California to testify. Ms. Connie Ward (Ward), an interpreter for Garcia, also arrived. When Garcia saw the witnesses, he told Kohler that he wanted to discuss the *Alford* plea. After a lunch break, Garcia decided to enter an *Alford* plea in return for a reduced charge of injury by conduct regardless of life on one of the two attempted murder counts.

To do so, he signed two forms. The first was a "Guilty Plea Questionnaire and Waiver of Rights Form" that described the rights which are given up when a plea is entered and described the charges being pled to. On the front the charges were listed as "ATTEMPT MURDER" and "IBCROL," and on the back they were listed as "ATTEMPT 1° MURDER" and "IBCROL." IBCROL is an abbreviation for injury by conduct regardless of life, although that fact was not disclosed on the form. The second form was a "Waiver of Trial By Jury" and stated that the defendant "waives trial by jury and consents to immediate trial before the court without a jury."

After Garcia signed the forms, the prosecutor described the plea negotiations to the court, with an interpreter present, leading to the following colloquy:

THE COURT: And does your client understand his constitutional rights and rights under the law to a jury trial, et cetera?

MR. KOHLER: Yes, Your Honor. I have gone over it on a number of occasions.

THE COURT: And is it your understanding—do you feel he understands what the negotiation is that has been just described by the district attorney?

MR. KOHLER: I do. Your Honor, Mr. Garcia has always been able to communicate to me in English without any problem. He's more comfortable in Spanish, but yet has an understanding of English. He is very bilingual.

THE COURT: Very good. We do have an interpreter . . . . You are Martin Garcia?

THE DEFENDANT: (Through interpreter): Yes, Your Honor.

THE COURT: It is my understanding that you wish to change your plea to Count 1 . . . from not guilty to an Alford-type plea which means that while you maintain that you did not commit the act, that the evidence against you is sufficiently strong that you and your attorney

853

believe that the jury would most probably bring in a verdict of guilty to the offense charged. Is that what you want to do?

THE DEFENDANT: (Through interpreter): Yes, Your Honor.

THE COURT: And are you pleading guilty under Alford-type conditions freely and voluntarily?

THE DEFENDANT: (Through interpreter): Yes, Your Honor.

THE COURT: With respect to Count 2 . . . the state has proposed to amend the charge to injury by conduct regardless of life . . . . It is my understanding to this charge that you desire to enter a plea of guilty. Is that correct?

THE DEFENDANT: (Through interpreter): Yes, Your Honor.

The court went on to question Garcia about whether he understood that the court could impose the maximum sentence on the charges, to which Garcia, through the interpreter, answered "Yes, Your Honor." The conversation continued:

THE COURT: And in all respects, are you acting freely and voluntarily?

THE DEFENDANT: (Through interpreter): Yes, Your Honor.

THE COURT: Are you satisfied with the representation Mr. Marty Kohler has provided you during the course of these proceedings?

THE DEFENDANT: (Through interpreter): Yes.

THE COURT: Has he explained to you all of your rights that are important to you as well as the possible defenses that you have?

THE DEFENDANT: (Through interpreter): Yes, Your Honor.

The court then asked Garcia whether he was agreeing to give up a series of rights, including the right to a jury trial. To each question, Garcia answered "Yes, Your Honor." After the prosecutor read into the record the facts the State was prepared to prove, the circuit court accepted the plea.

One month later, Garcia filed a motion to withdraw his plea. Kohler withdrew from the case. After two more attorneys withdrew, Garcia's sixth counsel, Mr. Domingo Cruz, was appointed. The circuit court denied Garcia's motion on April 5, 1989. After sentencing, Garcia's seventh and current counsel, Mr. Michael T. Sullivan, Jr., was appointed and he filed another motion to withdraw the plea pursuant to secs. 809.30 and 974.02, Stats., (1993–94). The circuit court denied that motion on August 21, 1990.

Garcia appealed both orders, and the court of appeals reversed the April 5, 1989 order because the circuit court had applied the wrong legal standard, i.e. the circuit court ruled that the plea could not be withdrawn because there was no showing of "manifest injustice" where it should have used the more liberal standard allowing withdrawal upon the showing of "any fair and just reason." *State v. Garcia,* No. 90–2025–CR, unpublished slip op. (Wis. Ct. App. June 4, 1991). On remand, hearings were held on January 28, 1992, April 17, 1992, and May 19, 1993, and the

circuit court again denied Garcia's motion. Garcia again appealed the judgment of conviction and orders denying withdrawal of his plea, and the court of appeals this time affirmed. Garcia then petitioned this Court for review, which was granted.

## II. *ALFORD* PLEAS IN WISCONSIN

An *Alford* plea is a guilty plea in which the defendant pleads guilty while either maintaining his innocence or not admitting having committed the crime. The court of appeals held *Alford* pleas to be acceptable in *State v. Johnson,* 105 Wis. 2d 657, 661–63, 314 N.W.2d 897 (Ct. App. 1981). However, although this Court has cited *North Carolina v. Alford,* 400 U.S. 25 (1970), with approval,[2] the issue of the appropriateness of *Alford* pleas has never been directly presented to this Court. This case presents the question, and we now hold that the circuit courts of Wisconsin may, in their discretion, accept *Alford* pleas.

"Whatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered they can benefit all concerned." *Bordenkircher v. Hayes,* 434 U.S. 357, 361–62 (1978). The benefit created is a "mutuality of advantage" whereby both prosecutors and defendants have incentives to avoid trial. *Brady v. United States,* 397 U.S. 742, 752 (1970).

---

[2] *See State v. Minniecheske,* 127 Wis. 2d 234, 241 n.3, 378 N.W.2d 283 (1985), *modified by, State v. Bangert,* 131 Wis. 2d 234, 378 N.W.2d 283 (1985); *Morones v. State,* 61 Wis. 2d 544, 551 n.12, 213 N.W.2d 31 (1973); *State v. Chabonian,* 55 Wis. 2d 723, 729–30, 201 N.W.2d 25 (1972).

The defendant's motives are to limit his exposure to punishment or avoid the stress of trial and the State's motive is to avoid exhausting scarce resources. *Id.*

A defendant may wish to plead guilty yet publicly maintain his innocence to avoid ridicule or embarrassment, such as where the charge is sexual assault of children. *See State v. McQuay,* 154 Wis. 2d 116, 120–21, 452 N.W.2d 377 (1990). Other times he might plead guilty while protesting his innocence because he does not think the jury will believe his claim of self-defense or accident. *See People v. Wolff,* 208 N.W.2d 457, 463 (Mich. 1973). Whether or not the defendant's motive can be ascertained by outside observers, the *Alford* plea gives the defendant a valuable option. Garcia's position would deny to a defendant who protests his innocence or does not admit having committed the crime the right to make a choice at the bargaining table. Instead, Garcia "argues in effect that the State should not have allowed him this choice but should have insisted on proving him guilty [of the more serious offense]." *Alford,* 400 U.S. at 38–39.

The *Alford* plea is not inconsistent with this Court's decision in *Ernst v. State,* 43 Wis. 2d 661, 170 N.W.2d 713 (1969), which held that there must be a factual basis for the charge in order for a circuit court to accept a guilty plea. *Id.* at 673, *overruled in part on other grounds, State v. Bangert,* 131 Wis. 2d at 246, 389 N.W.2d 12 (1986). As the Court of Appeals explained in *Johnson* the plea is acceptable where the trial court determines that strong proof of guilt has been shown:

> We conclude that in Wisconsin a trial court can accept an *Alford* plea of guilty without violating the factual basis rule of *Ernst v. State* where, despite defendant's protestations of innocence, the trial

857

court determines that the prosecutor's summary of the evidence the state would offer at trial is strong proof of guilt.

*Johnson,* 105 Wis. 2d at 663.

■

Garcia also argues that *Alford* pleas are so inherently contradictory that they oftentimes confuse defendants to the extent that they do not understand they are entering a guilty plea. But, "[d]efendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice." *Bordenkircher,* 434 U.S. at 363. Competent counsel can easily explain the *Alford* plea. Moreover, defendants in Wisconsin are protected by procedural safeguards of sec. 971.08, Stats.,[3] and by materials developed for the circuit courts by the Wisconsin Jury Instructions Committee specifically for *Alford* pleas. Wis. JI—Criminal SM–32A at 9–14 (1985). For example, circuit courts have a mandatory duty to personally determine on the record the defendant's understanding of the nature of the charge. Section 971.08, Stats. Further, the Committee materials direct circuit judges to ask defense counsel on the record whether counsel has discussed the consequences of the plea with the defendant, and if so, whether the defendant has expressed his understand-

---

[3] Section 971.08, Stats. (1993–94), provides in part:

**971.08 Pleas of guilty and no contest; withdrawal thereof.**
**(1)** Before the court accepts a plea of guilty or no contest, it shall do all of the following:

(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.

(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged. . . .

ing of those consequences. Wis. JI—Criminal SM–32A at 12.

■

Garcia's next argument is that *Alford* pleas should be eliminated because they deny the public a "moral foundation" for the conviction. This same problem exists with the *nolo contendere* or no contest plea, which Garcia argues would be left as a valid alternative to an *Alford* plea if this Court were to find *Alford* pleas to be unacceptable. For the reason argued by Garcia, as well as others, both pleas are subject to the approval of the circuit court. The circuit court may reject the plea if it concludes that the plea is contrary to the public interest or the interests of justice. *See* Wis. JI—Criminal SM–32A at 8, 14.

■

Finally, Garcia argues that the *Alford* plea has been rejected in several other jurisdictions.[4] However, the far more common holding is that *Alford* pleas are acceptable where there is strong evidence of actual guilt and where the plea was knowing, voluntary and intelligent.[5] We conclude that where an adequate

[4] Indiana, New Jersey and Pennsylvania prohibit *Alford* pleas. *Atchley v. State,* 622 N.E.2d 502, 503 (Ind. 1993); *State v. Smullen,* 571 A.2d 1305, 1308 (N.J. 1990); *Eisenberg v. Com., Dept. of Public Welfare,* 485 A.2d 511, 514 (Pa. Cmwlth. 1984), *aff'd as modified,* 516 A.2d 333 (Pa. 1986) (state does not recognize *Alford* pleas, but such pleas made in federal court are treated as nolo contendere pleas).

[5] At least 29 states permit a defendant to enter an *Alford* plea. *See Allison v. State,* 495 So. 2d 739, 741 (Ala. Crim. App. 1986); *Harris v. State,* 620 S.W.2d 289, 291 (Ark. 1981); *In re Alvernaz,* 830 P.2d 747, 758 n.9 (Cal. 1992); *People v. Canino,* 508 P.2d 1273, 1275 (Colo. 1973) (en banc); *State v. Amarillo,* 503 A.2d 146, 162 n.17 (Conn. 1986); *Robinson v. State,* 291 A.2d 279, 281 (Del. Supr. Ct. 1972); *Goodman v. Davis,* 287

record of the "strong proof of guilt" behind the *Alford* plea has been made, *Johnson,* 105 Wis. 2d at 663, the procedural safeguards in sec. 971.08, Stats., with applicable review if the statute is not followed, are sufficient to assure that an *Alford* plea is entered in a constitutionally acceptable manner.[6] To facilitate the making of an adequate record, we encourage trial judges to use the Wisconsin Jury Instructions when accepting *Alford* pleas, however, the use of the Instructions is not mandatory.

S.E.2d 26, 30 (Ga. 1982); *State v. Smith,* 606 P.2d 86, 89 (Hawaii 1980); *Sparrow v. State,* 625 P.2d 414, 415 (Idaho 1981); *People v. Barker,* 415 N.E.2d 404, 410 (Ill. 1980), *cert. denied,* 452 U.S. 964 (1981); *State v. Hansen,* 344 N.W.2d 725, 727 n.1 (Iowa App. 1983); *State v. Dillon,* 748 P.2d 856, 859–60 (Kan. 1988); *Com. v. Corey,* 826 S.W.2d 319, 321 (Ky. 1992); *State v. Malo,* 577 A.2d 332, 334 (Me. 1990); *Benegura v. Taylor,* 541 A.2d 969, 971 n.1 (Md. 1988); *Com. v. Lewis,* 506 N.E.2d 891, 892 (Mass. 1987); *State v. Winchell,* 363 N.W.2d 2d 747, 749 (Minn. 1985); *State v. Cameron,* 830 P.2d 1284, 1290 (Mont. 1992); *State v. Rhodes,* 445 N.W.2d 622, 624–25 (Neb. 1989); *People v. Hicks,* 608 N.Y.S.2d 543, 543–44 (A.D. 3 Dept 1994); *State v. McClure,* 185 S.E.2d 693, 696–97 (N.C. 1972); *State v. Padgett,* 586 N.E.2d 1194, 1198 (Ohio App. 2 Dist. 1990); *Ocampo v. State,* 778 P.2d 920, 923 (Ok. Cr. 1989); *State v. Fontaine,* 559 A.2d 622, 624 (R.I. 1989); *State v. Williams,* 851 S.W.2d 828, 830 (Tenn. Cr. App. 1992); *Johnson v. State,* 478 S.W.2d 954, 955 (Tex. Cr. 1972); *State v. Stilling,* 856 P.2d 666, 671 (Utah App. 1993); *State v. Osborne,* 684 P.2d 683, 687 (Wash. 1984); *Johnston v. State,* 829 P.2d 1179, 1181 (Wyo. 1992).

[6] Although not required to make the plea acceptable, including a definition of an *Alford* plea on the guilty plea questionnaire may help to further document the defendant's understanding of the plea. We invite the Wisconsin Jury Instruction Committee to consider making such a change on the form.

## III. WITHDRAWAL OF GARCIA'S *ALFORD* PLEA

Garcia argues that the circuit court should have permitted him to withdraw his *Alford* plea before sentencing because he was confused about the consequence of entering the plea. In the alternative, Garcia argues that the circuit court should have allowed him to withdraw his plea after sentencing because he did not understand the elements of the crime to which he pled guilty.

### A. *Plea withdrawal prior to sentencing*

This Court will sustain a circuit court's ruling denying a motion to withdraw a plea unless the circuit court erroneously exercised its discretion. *State v. Canedy,* 161 Wis. 2d 565, 579, 469 N.W.2d 163 (1991). "A discretionary determination, to be sustained, must demonstrably be made and based upon facts appearing in the record and in reliance on the appropriate and applicable law." *Id.* at 579–80 *(quoting Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981)).

A circuit court should freely allow a defendant to withdraw his plea prior to sentencing if it finds any fair and just reason for withdrawal, unless the prosecution has been substantially prejudiced by reliance on the defendant's plea.[7] *Id.* at 582. "But 'freely' doesn't mean automatically." *Id.* A fair and just reason is "some adequate reason for defendant's change of heart . . . other

---

[7] Because we hold the trial court did not erroneously exercise its discretion when it found no fair and just reason to allow Garcia to withdraw his plea, we do not reach the issue of prejudice to the State.

than the desire to have a trial." *Id.* at 583. The burden is on the defendant to prove a fair and just reason for withdrawal of the plea by a preponderance of the evidence. *Id.* at 584.

Garcia asserted at the postconviction hearing that he was confused at the time he entered his plea about the consequences that would stem from entering an *Alford* plea.[8] Garcia correctly states that confusion is a fair and just reason for withdrawal. *Dudrey v. State,* 74 Wis. 2d 480, 485, 247 N.W.2d 105 (1976). Garcia also states that, although his motion to withdraw his plea was not filed until one month after the plea was entered, he realized that he made the wrong decision the same day he entered the plea. "[A] swift change of heart is in itself a strong indication that a plea is entered in haste and confusion." *United States v. Barker,* 514 F.2d 208, 222 (D.C. Cir.), *cert. denied,* 421 U.S. 1013 (1975).

---

[8] Garcia made this claim during the hearings after the remand from the court of appeals. During the initial hearings on the motion to withdraw the plea, Attorney Cruz, who spoke Spanish and was counsel for Garcia, interjected while the State was attempting to show Garcia's proficiency in English with this statement:

> Your Honor, if I may? We have made no allegations that Connie Ward did not interpret for Mr. Garcia what occurred in the proceedings that day. He's acknowledged that he speaks limited English, he's acknowledged he speaks limited English and has limited understanding of limited English and I don't really think that's the thrust of our Motion. On that basis, to say that somehow the proceedings are tainted because Miss Ward didn't interpret the guilty plea questionnaire properly or that the Court didn't afford Mr. Garcia an interpreter, I don't think that's the thrust of our Motion. *Our Motion is Mr. Garcia simply understood the form but did not wish to sign the form. He felt compelled to sign the form.* (Emphasis added).

Here, the circuit court found that Garcia's claim of confusion as a reason for withdrawing his *Alford* plea was "incredible" and therefore found that there was no "fair and just reason" for the withdrawal of Garcia's plea. This Court held in *Canedy* that if the circuit court does not believe the defendant's asserted reasons for withdrawal of the plea, there is no fair and just reason to allow withdrawal of the plea. *Canedy,* 161 Wis. 2d at 585; *see also Dudrey,* 74 Wis. 2d at 483. Thus, if the circuit court's factual findings were correct, its ruling was supported by law.

Examination of the circuit court's order shows that the circuit court did not erroneously exercise its discretion by finding that Garcia understood the plea negotiation at the time he entered his plea. The circuit court found that Garcia was a "reasonably intelligent person who did not enter any special pleas based upon a lack of mental skills." The court also commented on the "great facility with the English language" exhibited by Garcia at the 1992 and 1993 hearings. Further, the court noted the testimony of Kohler and Radomski. Kohler testified that he never had difficulty communicating with Garcia during any of his more than twenty visits with him prior to trial. Kohler also stated that, until Ms. Ward arrived on the day set for trial, "I never really realized he spoke Spanish, to be honest with you." Moreover, Radomski testified that he was with Garcia for sixteen hours in 1987, and he and Garcia conversed in English that entire time, including while Garcia was giving a statement in which he confessed to the shooting. Finally, the court stated that, "His perception of all sorts of nuances regarding his rights, regarding his actions, regarding the implications of the questions are remarkably sophisticated. I can't attri-

bute that to the six years that he spent in the Wisconsin State Prison."

Garcia argues that the circuit court erred by relying on his fluency in English at the 1992 and 1993 evidentiary hearings to conclude that he spoke English well when the plea was entered because the plea hearing was five years prior to those hearings. It is true that the operative time period for determining the defendant's understanding of the nature of the charge is at the plea hearing itself. *Bangert,* 131 Wis. 2d at 269. Here, the circuit court used the correct time period, relying on the testimony of Kohler and Radomski as well as the testimony of Ward who stated that Garcia "understood English quite well" and the court's own extensive dealings with the defendant including the court's statement only two months after the trial that "[t]he defendant's candor has not been particularly auspicious in this case because we had some discussions, and it's clear from the discussions we've had this morning that the defendant is very facile with the English language." The circuit court used Garcia's ability in the English language in 1992 and 1993 only to highlight the utterly incredible nature of Garcia's claim as to his ability in 1988.

B. *Plea withdrawal after sentencing*

A defendant who files a motion to withdraw his plea after sentencing is entitled to withdraw his plea as a matter of constitutional right if he demonstrates that he did not understand the elements of the crimes to which he pled. *State v. Carter,* 131 Wis. 2d 69, 73–80, 389 N.W.2d 1, *cert. denied,* 479 U.S. 989 (1986). We review constitutional questions independently of the

864

conclusions made by the circuit court and the court of appeals. *Bangert,* 131 Wis. 2d at 283.

Section 971.08(1), Stats., states that a circuit court in accepting a guilty or no contest plea must "[a]ddress the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted."[9] In *Bangert,* this Court outlined three methods that fulfill this obligation. *Bangert,* 131 Wis. 2d at 268.[10] The State concedes that the circuit court did not follow any of these methods. However, a violation of sec. 971.08 is not itself constitutionally significant. *Id.* at 261 n.3.

If a defendant who filed an appeal pursuant to sec. 974.02 and 809.30, Stats. (1993–94), shows that the circuit court did not determine on the record at the plea hearing that the defendant understood the nature of the crimes charged, the burden shifts to the State to show by clear and convincing evidence that the defendant's plea was knowingly, voluntarily and intelligently entered. *Id.* at 275. In meeting this burden, the State may utilize the entire record to show

---

[9] See *supra* n.3.

[10] Those three methods were described as follows:

First, the trial court may summarize the elements of the crime charged by reading from the appropriate jury instructions, or from the applicable statute. Second, the trial judge may ask defendant's counsel whether he explained the nature of the charge to the defendant and request him to summarize the extent of the explanation, including a reiteration of the elements, at the plea hearing. Third, the trial judge may expressly refer to the record or other evidence of defendant's knowledge of the nature of the charge established prior to the plea hearing.

*Bangert,* 131 Wis. 2d at 268 (citations omitted).

that the defendant entered a valid plea. *Id.* at 275. "The state may examine the defendant or defendant's counsel to shed light on the defendant's understanding or knowledge of information necessary for him to enter a voluntary and intelligent plea." *Id.* The court may also look to the guilty plea questionnaire form signed by the defendant to determine if his plea was voluntarily, knowingly and intelligently made. *State v. Moederndorfer,* 141 Wis. 2d 823, 827–28, 416 N.W.2d 627 (Ct. App. 1987). "In essence, the state will be required to show that the defendant in fact possessed the constitutionally required understanding and knowledge . . . ." *Bangert,* 131 Wis. 2d at 275.

After reviewing the entire record, we conclude that the State presented clear and convincing evidence that Garcia understood the nature of the charges. The guilty plea questionnaire that Kohler read to Garcia in English and that Ward translated into Spanish stated that, "I have had read to me the criminal complaint and the information in this case, and I understand what I am charged with, what the penalties are and why I have been charged. I also understand the elements of the offense and their relationship to the facts in this case." Further, Kohler assured the court that he had discussed with Garcia the constitutional rights he was waiving on numerous occasions, and that Kohler felt that Garcia understood the plea negotiations. Kohler also testified that he explained the elements of the crimes to Garcia in layman's terms, and did so while Ward was interpreting. Moreover, Garcia told the court that he was entering the plea voluntarily, that he was satisfied with the representation he had been given by Kohler, and that Kohler had explained all of his rights and possible defenses to him. All of this together with

what the circuit court found to be the "incredible" nature of Garcia's testimony and the circuit court's finding that Garcia "appears to be manipulating the Court, manipulating the justice system" provides clear and convincing evidence that Garcia understood the nature of the charges, and entered his plea voluntarily, knowingly and intelligently.

In conclusion, we hold that *Alford* pleas are acceptable in Wisconsin. We further hold that the circumstances surrounding Garcia's *Alford* plea do not require that he be allowed to withdraw that plea.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. *(concurring)*. I write separately to stress the longstanding law in this state. Despite what the majority touts as the "mutuality of advantage" of plea agreements, circuit courts are required to scrutinize such arrangements closely. "Circuit courts in this state may not involve themselves in the plea agreement process and are not bound by any plea agreement between a prosecutor and a defendant. Before permitting a prosecutor to amend charges to allege a less serious offense and before accepting a defendant's guilty or no contest plea to the amended charges, the circuit court must satisfy itself that the amended charges fit the crime and that the amendments are in the public interest." *State v. Comstock*, 168 Wis. 2d 915, 927, 485 N.W.2d 354 (1992). "A circuit court has the power to accept or reject a plea agreement reducing or amending charges . . . ." *Id.*, n.11.

Furthermore, a circuit court cannot enter a plea of guilty coupled with claims of innocence "unless there is a factual basis for the plea and until the judge taking

the plea has inquired into and sought to resolve the conflict between the waiver of trial and the claim of innocence." *North Carolina v. Alford,* 400 U.S. 25, 38 n.10 (1970).

WILCOX, J. *(concurring).* I agree with the majority that "the circumstances surrounding Garcia's *Alford* plea do not require that he be allowed to withdraw that plea." Majority op. at 867. I also agree with the majority that under the present state of the law in Wisconsin, a trial court may, under the appropriate circumstances, accept an *Alford* plea. I feel compelled, however, to write separately to express my concerns regarding the use of these seemingly innocuous pleas. Quite simply, I am troubled that a defendant may plead guilty to a charge while continuing to protest his innocence thereto. As noted by the United States Supreme Court, "[t]he dual aim of our criminal justice system is 'that guilt shall not escape or innocence suffer.' " *United States v. Nobles,* 422 U.S. 225, 230 (1975) (citation omitted). An *Alford* plea, in my mind, contradicts this very simple proposition.

Further, I believe that the use of *Alford* pleas in Wisconsin has an adverse effect on the public's perspective regarding justice.[1] In our democracy, the

---

[1] On this ground, Garcia asserted that *Alford* pleas should be eliminated because they deny the public a "moral foundation" for the conviction. The majority counters this attack by maintaining that "[t]his same problem exists with the *nolo contendere* or no contest plea." Majority op. at 859. While I recognize that the no contest plea and the *Alford* plea both lack an express admission of guilt, I believe that the *Alford* plea, with its concomitant protestations of innocence, goes well beyond a plea of no contest. As noted in Wis. JI—Criminal SM–32A 1 (1985):

868

victim of a crime places his or her trust in the criminal justice system. How then does a victim react when he or she hears the defendant plead guilty while all the while maintaining his innocence to the crime? The sense of finality is clearly missing. And what of the defendant? Having chosen to maintain his innocence to the crime, it is unlikely that he will willingly subject himself to the rehabilitative process.

An *Alford* plea may, in some instances foster expediency. As noted correctly by the majority, in many instances the plea allows the state to conserve scarce resources in its battle against crime.[2] It may also serve to shield a defendant from ridicule and embarrassment in cases such as those involving sexual assault. Even granting these so-called "benefits," I believe that an *Alford* plea is a troubling way to finalize the criminal judicial process. I recommend that the trial courts in this state act with great reticence when confronted with an *Alford* plea.

---

The terms "no contest plea" and "*Alford* plea" are sometimes used interchangeably. However, the *Alford* case clearly dealt with a guilty plea, not a plea of no contest, so there [sic] probably are two different entities. An *Alford* plea goes beyond a no contest plea in the sense that the former involves an outright claim of innocence while the later involves something less than an express admission of guilt.

[2] However, as noted by Judge Charles Schudson in his concurrence at the court of appeals, this case proves that *Alford* pleas are not always an expedient in the criminal judicial process. From 1988 to 1995, Garcia's two post-conviction motions, two evidentiary hearings, and three appeals have all flowed from the trial court's acceptance of the *Alford* plea.