**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**November 2, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP2131-CR**

Cir. Ct. No. **2017CF4892**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT I**

---

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

  V.

ROBERT M. ANDERSON, JR.,

      DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County: DAVID L. BOROWSKI, Judge. *Order affirmed in part, reversed in part, and cause remanded with directions.*

Before Brash, C.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Robert M. Anderson, Jr. appeals his judgment of conviction after entering pleas to charges of second-degree reckless homicide by use of a dangerous weapon and possession of a firearm by a felon.  He also appeals the order denying his motions for postconviction relief.[1]

¶2    In Anderson's first postconviction motion, he sought to withdraw his pleas on the grounds that he received ineffective assistance of counsel because counsel did not advise him that he could receive the maximum penalty.  He further asserted that his sentence was unduly harsh and excessive, and sought resentencing. The trial court rejected those claims and denied that motion without a hearing.

¶3    Anderson then filed a supplemental postconviction motion claiming that he had newly discovered evidence in the form of an affidavit by a witness who stated that he saw Anderson's brother commit the homicide.  In the alternative, Anderson sought resentencing on the grounds that the trial court improperly considered Anderson's race as a sentencing factor, and that the trial court did not allow Anderson's trial counsel the opportunity to argue that consideration should be given to Anderson's taking responsibility for these crimes by entering guilty pleas. The trial court rejected Anderson's claims in the supplemental motion as well, and also denied it without a hearing.

¶4    Upon review, we conclude that Anderson is entitled to an evidentiary hearing on his claim relating to newly discovered evidence.  We therefore remand

---

[1] Anderson's pleas were taken by the Honorable Carolina Stark.   Anderson's presentencing motion to withdraw his pleas, his sentencing, and both postconviction motions were before the Honorable David L. Borowski.  We refer generally to them both as the trial court.

this matter to the trial court for an evidentiary hearing on that issue.[2]  However, with regard to Anderson's other claims in his postconviction motions, we affirm.

## BACKGROUND

¶5      The charges against Anderson stem from a shooting that occurred in July 2017 on North 23rd Street in Milwaukee.  Police officers responded to a call regarding the homicide of six-year-old Justin Evans, who had been on the front porch steps of a residence on that street when he was shot.  The investigation revealed that a vehicle had been seen doing "donuts" in the nearby intersection, and that the person who shot Justin may have been shooting at that vehicle.

¶6      According to the complaint, police interviewed a confidential witness who was present during the shooting.  Just prior to the shooting, that witness saw Anderson—who the witness identified in a photo array—standing in the street, yelling at someone in the intersection.  The witness then looked away, but upon hearing gunshots, looked back and saw Anderson with a firearm in his hand, running toward the intersection, continuing to fire the gun as he ran.  The witness said that Anderson then left the scene in a vehicle with two other males.  Police determined that the direction of those shots fired, as described by the witness, was consistent with the direction from which Justin had been shot.

¶7      Anderson was arrested and charged with first-degree reckless homicide as a party to a crime with the use of a dangerous weapon and with a habitual criminality enhancer, along with possession of a firearm by a felon, also

---

[2] Although Anderson filed two postconviction motions in this matter addressing different issues, only the order relating to the second, supplemental postconviction motion is deemed to be a final order; the further proceedings held on that supplemental motion rendered the order from the initial motion nonfinal.  Additionally, while Anderson appeals both the judgment of conviction and the final order, we address only the order for the reasons set forth in this opinion.

with a habitual criminality enhancer. Anderson subsequently entered into a plea agreement by which the first-degree reckless homicide charge was amended to second-degree reckless homicide, and the habitual criminality enhancers were dropped for both that charge and the felon in possession of a firearm charge. Under the agreement, the State was to recommend substantial prison time. Anderson entered his pleas to both charges in April 2018.

¶8 After that plea hearing but before sentencing, Anderson filed a motion to withdraw his pleas. He alleged that he did not understand the meaning of the term "substantial prison." He further claimed that he never read the applicable jury instructions prior to entering the pleas, and had he known "what the [S]tate had to prove at trial," he would not have pled guilty.

¶9 Additionally, Anderson alleged ineffective assistance of his trial counsel who represented him through the plea hearing.[3] He claimed that counsel had failed to investigate witnesses, misled him as to the availability of the State's key witnesses, and "was not truly prepared for trial." In fact, during the plea hearing, Anderson told the trial court that he did not want to proceed with entering the pleas and that he wanted a new attorney. The trial court rejected his request for a new attorney and the plea hearing resumed with Anderson entering pleas to the amended charges. In his motion for plea withdrawal, Anderson alleged that when the trial court denied his request for a new attorney, he felt that he was in a "'lose lose' situation" of either going to trial with an attorney he believed was unprepared, or going ahead with the pleas.

---

[3] Anderson informed his trial counsel after the plea hearing that he wanted to withdraw his pleas. Counsel then filed a motion to withdraw which was granted by the trial court, and new counsel was appointed.

¶10     The trial court held a hearing on that presentencing plea withdrawal motion in October 2018, during which it denied the motion. The trial court found that granting it would be "extremely prejudicial" to the State, primarily based on its difficulty in locating and securing witnesses in preparation for trial.[4] Additionally, the court did not find Anderson's testimony regarding his lack of understanding of the plea agreement credible.

¶11     The matter then proceeded to sentencing. As agreed to under the plea agreement, the State asked for "substantial prison." Anderson's new trial counsel then argued that "great weight" should be given to the fact that Anderson had accepted responsibility for the crimes by pleading guilty. The trial court disagreed, noting that Anderson had subsequently tried to withdraw his pleas. The court also commented about the circumstances of the homicide—which it characterized as "an act of human depravity"—and further noted that "[t]he average homicide in this city is so frequent that no one cares, and the average homicide is one black male shooting another black male. In this case, the human depravity that I saw exhibited killed a six year old[.]" The court then imposed the maximum sentences allowable: twenty years of initial confinement and ten years of extended supervision for the reckless homicide charge with the dangerous weapon enhancer, and five years of initial confinement and five years of extended supervision for the felon in possession of a firearm charge, to be served consecutively. *See* WIS. STAT. § 940.06(1); WIS. STAT. § 939.63(1)(b); WIS. STAT. § 941.29(1m)(a); WIS. STAT. §§ 939.50(3)(d) and (3)(g)

---

[4] "A [trial] court should freely allow a defendant to withdraw his plea prior to sentencing if it finds any fair and just reason for withdrawal, unless the prosecution has been substantially prejudiced by reliance on the defendant's plea." *State v. Garcia*, 192 Wis. 2d 845, 861, 532 N.W.2d 111 (1995).

5

(2017-18).[5]  Indeed, the court observed that "[i]f any case ever warrants the maximum, this is it."

¶12   Anderson filed his first postconviction motion in October 2019.  He claimed that he should be allowed to withdraw his pleas due to the ineffective assistance of his first trial counsel at the plea hearing.  He asserted that he believed he was "guaranteed" not to get the maximum penalty because counsel had told him "the court did not sentence people to the maximum penalty when they accepted responsibility and pled guilty."  Anderson also sought resentencing, claiming that the maximum penalties imposed were unduly harsh and excessive given the fact that he had entered pleas to the charges, which meant that Justin's family did not have to go through a trial.

¶13   The trial court rejected these arguments.  With regard to the ineffective assistance claim, the court found that even if Anderson's first trial counsel had performed deficiently regarding sentencing advice, Anderson had not demonstrated prejudice because he had made "no meaningful allegation" that he would have gone to trial and "risked far greater exposure" even if counsel had informed him that the maximum penalty was a possibility, noting that the plea agreement reduced his total exposure by sixty-five years.

¶14   The trial court also rejected Anderson's claim that his sentence was unduly harsh and excessive.  The court stated that it recognized that Anderson had pled guilty to the charges, but that it was "this court's view that he did so only after … he was informed that the State's witnesses were in custody and available to testify, so he got no credit for that."  The court also noted Anderson's criminal

---

[5] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

record, stating that the charges in the case "signaled an alarming escalation in criminality."

¶15    Finally, the court stated that, as it had observed at sentencing, this was "one [of] the most aggravated, heinous, senseless homicides" that it had presided over, and for that reason, Anderson was deserving of the most severe punishment. Therefore, the court determined that the sentence imposed was not unduly harsh and excessive, but rather it was "the only sentence the court deemed sufficient to accomplish the sentencing goals of punishment, deterrence and community protection." The motion was thus denied without a hearing.

¶16    Anderson filed his "supplemental" postconviction motion in July 2020, this time seeking to withdraw his pleas on the ground of newly discovered evidence. The alleged new evidence was an affidavit from Christopher Pickens, with whom Anderson was incarcerated. Pickens averred that he was present during the shooting in July 2017, and that Anderson's brother, Devon, was actually the shooter; Pickens said that he saw Anderson on a porch of a residence on North 23rd Street at that time, and that Anderson remained on the porch throughout the incident.

¶17    The trial court rejected this claim. It suggested that Anderson was willing to implicate his brother because "[c]onveniently" Devon had died in May 2018. Ultimately, the court found that there was "not a reasonable probability that a jury hearing all of the evidence, including [Anderson's] purported newly discovered evidence, would have reasonable doubt as to the defendant's guilt" in light of the State's evidence against Anderson.

¶18    Anderson's supplemental postconviction motion also included arguments for resentencing. First, he asserted that the trial court improperly relied on race as a factor in imposing his sentence. The court "categorically reject[ed]"

that assertion. The court explained that its comment during the sentencing hearing that "the average homicide is one black male shooting another black male" was made "within the broader scope of its discussion about the unabated level of homicide violence in the community." The court recognized that "comments about race can be uncomfortable," but stated that "not every mention of race during the rendition of sentence amounts to a due process violation." The court further noted that the record "reflects that the court sentenced [Anderson] as a contributor to that violence based upon the individualized factors it considered … and not because of his racial community," stating emphatically that it "did not *rely* on race as a factor in determining an appropriate sentence in this case."

¶19    Anderson also argued that resentencing is warranted because the trial court did not let his new trial counsel "meaningfully argue" at the sentencing hearing that Anderson should be given "credit" for entering his guilty pleas. This claim is based on an exchange between counsel and the court when counsel argued that "great weight" should be given to the fact that Anderson had accepted responsibility for the crimes by pleading guilty:

> THE COURT: Well, Counsel, he also tried to withdraw his plea.
>
> [TRIAL COUNSEL]: Those, Judge—
>
> THE COURT: It was a total stunt.
>
> [TRIAL COUNSEL]: Listen—
>
> THE COURT: Don't use the word, "Listen," with me.
>
> [TRIAL COUNSEL]: No. I'm just saying with—
>
> THE COURT: Don't use that language with me.
>
> [TRIAL COUNSEL]: It's a legal argument. It's a legal decision. It's a right of his to pursue—

THE COURT: You cannot sit here and tell me I should give him credit for accepting a plea when he then months later tried and failed to withdraw the plea with a specious argument. He doesn't get it both ways, Counsel.

[TRIAL COUNSEL]: Of course—

THE COURT: Sorry.

[TRIAL COUNSEL]: Of course, you have to give him credit for acceptance of responsibility. That's exactly what—

THE COURT: [Counsel], if you don't lose the tone right now, you're going to have a problem. Got it?

[TRIAL COUNSEL]: How is my tone different than your tone?

THE COURT: It doesn't matter. Lose it, [Counsel], or you're going to be out of here. Move on.

[TRIAL COUNSEL]: You must give him credit for acceptance of responsibility. That's what a plea is.

THE COURT: Thanks, Counsel. Thanks.

[TRIAL COUNSEL]: You know you've read the transcript.

THE COURT: Right. I read the transcript.

[TRIAL COUNSEL]: You read the transcript; and you saw how clear even [the prosecutor] admits that, how clear he was admitting facts of the case. And that's what he did.

¶20    In its review of this claim in the supplemental postconviction motion, the trial court observed that Anderson did not identify any additional argument that his counsel was unable to make. Furthermore, the court stated that while it recognized that Anderson "deserved credit" for pleading guilty, any credit was "totally eroded" by the circumstances of the case, as well as Anderson's "horrific conduct" during the proceedings. The court explained that "no amount of argument

9

on this point would have persuaded the court to impose anything less than a maximum sentence[.]"

¶21    Therefore, the trial court denied Anderson's supplemental postconviction without a hearing as well.  This appeal follows.

## DISCUSSION

¶22    On appeal, we review Anderson's postconviction motions, both of which request an evidentiary hearing on his claims, and ultimately seek the withdrawal of his pleas.  A defendant seeking to withdraw his or her plea after sentencing has a higher standard to meet than if withdrawal is sought prior to sentencing; after sentencing, he or she "must prove, by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in 'manifest injustice.'" *See State v. Brown*, 2006 WI 100, ¶18, 293 Wis. 2d 594, 716 N.W.2d 906 (citation omitted).  The "'mere assertion'" of manifest injustice, however, "'does not entitle a defendant to the granting of relief[.]'" *State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433 (citation omitted).

¶23    Indeed, a defendant is not automatically entitled to an evidentiary hearing relating to his or her postconviction motion.  *State v. Bentley*, 201 Wis. 2d 303, 310-11, 548 N.W.2d 50 (1996).  Rather, the trial court is required to hold an evidentiary hearing only if the defendant has alleged "sufficient material facts that, if true, would entitle the defendant to relief." *Allen*, 274 Wis. 2d 568, ¶14.  This is a question of law that we review *de novo*. *Id.*, ¶9.

¶24    If, on the other hand, the postconviction motion "does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief,"

the trial court, in its discretion, may either grant or deny a hearing.  *Id.*  We will uphold such a discretionary decision if the trial court "has examined the relevant facts, applied the proper legal standards, and engaged in a rational decision-making process."  *Bentley*, 201 Wis. 2d at 318.

*Claim of Newly Discovered Evidence*

¶25    We first address the State's argument that Anderson should be judicially estopped from seeking to withdraw his plea based on newly discovered evidence when he had admitted to the crimes by pleading guilty.  The doctrine of judicial estoppel "precludes a party from asserting a position in a legal proceeding and then subsequently asserting an inconsistent position."  *State v. Petty*, 201 Wis. 2d 337, 347, 548 N.W.2d 817 (1996).  Its application is intended to protect the judicial process from litigants who attempt to "play[] fast and loose with the courts[.]"  *Id.* at 346-47 (citations and some quotation marks omitted).  "Determining the elements and considerations involved before invoking the doctrine of judicial estoppel are questions of law" that this court reviews independently.  *See id.* at 347.

¶26    In its argument for applying judicial estoppel, the State points out that Anderson relies on *State v. Krieger*, 163 Wis. 2d 241, 255, 471 N.W.2d 599 (Ct. App. 1991), for its assertion that the newly discovered evidence test may be applied in motions for plea withdrawal.  The State argues that *Krieger* is distinguishable from this case, however, because in *Krieger* the defendant had entered a no-contest plea, as opposed to the guilty pleas entered by Anderson here.  *See id.* at 246-47.

¶27    Still, the State concedes that this court previously applied the newly discovered evidence test in *State v. Ferguson*, 2014 WI App 48, 354 Wis. 2d 253, 847 N.W.2d 900, where the defendant sought to withdraw his pleas after entering a

11

"straight" guilty plea. *See id.*, ¶¶6, 26-27. We are bound by that precedent, *see Cook v. Cook*, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997), and therefore we decline the State's request to apply the doctrine of judicial estoppel in this case.

¶28 Thus, we turn to Anderson's claim that Pickens' affidavit constitutes newly discovered evidence. "Newly discovered evidence may be sufficient to establish that a manifest injustice has occurred" for a defendant seeking to withdraw a guilty plea. *State v. McCallum*, 208 Wis. 2d 463, 473, 561 N.W.2d 707 (1997). Whether to allow the withdrawal of a plea under the manifest injustice standard is a decision within the trial court's discretion, and we will uphold that decision as long as the court properly exercised its discretion. *Id.* However, "[a]n exercise of discretion based on an erroneous application of the law is an erroneous exercise of discretion." *Id.*

¶29 In order to warrant plea withdrawal, newly discovered evidence must meet the following criteria: "(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative." *Id.* "If the defendant proves these four criteria by clear and convincing evidence, the [trial] court must determine whether a reasonable probability exists that a different result would be reached in a trial." *Id.*

¶30 It its decision denying Anderson's supplemental postconviction motion, the trial court focused on that final requirement, finding that there was not a reasonable probability that a jury hearing all of the evidence, "including [Anderson's] purported newly discovered evidence," would have reasonable doubt

regarding Anderson's guilt.[6] However, in reviewing Anderson's motion, we conclude that he has sufficiently pled his claim of newly discovered evidence. *See Allen*, 274 Wis. 2d 568, ¶23 (a defendant's postconviction motion must specifically allege "the five 'w's' and one 'h'; that is, who, what, where, when, why, and how" to be factually sufficient to demonstrate he or she is entitled to relief). Furthermore, "[i]f the facts in the motion are assumed to be true, yet seem to be questionable in their believability, the [trial] court must hold a hearing." *Id.*, ¶12 n.6.

¶31     It is clear from the trial court's decision that it did not consider the averments in Pickens' affidavit to be credible. However, pursuant to *Allen*, the proper procedure is to hold an evidentiary hearing in order to make such credibility determinations. *See id.* Therefore, the trial court erroneously exercised its discretion in failing to apply that law which requires holding an evidentiary hearing on this issue. *See McCallum*, 208 Wis. 2d at 473.

*Claim of Ineffective Assistance of Counsel*

¶32     We next discuss Anderson's claim that he received ineffective assistance from his first trial counsel relating to sentencing advice he was provided. Specifically, Anderson argues that counsel failed to explain that he could still receive the maximum penalty after counsel had explained the mitigating factors of the case, such as entering the guilty pleas.

---

[6] In its argument on appeal, the State also focuses on this requirement, without discussing the first four factors of the newly discovered evidence test. Furthermore, although the State "reserve[d] the right to address the first four factors if they ever become relevant" in its response to Anderson's supplemental postconviction motion, it did not renew that request in its response brief, nor did it respond to Anderson's assertions in his brief-in-chief that the factors were met. Thus, Anderson contends that the State has conceded that Pickens' affidavit meets those factors, and we agree. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments are deemed conceded).

¶33    Proving ineffective assistance of counsel is one way to establish a manifest injustice for purposes of plea withdrawal. *State v. Taylor*, 2013 WI 34, ¶49, 347 Wis. 2d 30, 829 N.W.2d 482. To prove ineffective assistance of counsel, a defendant must show that his trial counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant "must prevail on both parts of the test to be afforded relief." *Allen*, 274 Wis. 2d 568, ¶26.

¶34    A claim of ineffective assistance of counsel requires that a postconviction evidentiary hearing be held "to preserve the testimony of trial counsel." *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). However, as stated above, the trial court is only required to hold such a hearing if the defendant has sufficiently alleged facts in his postconviction motion that demonstrate he is entitled to relief. *See Allen*, 274 Wis. 2d 568, ¶14.

¶35    In his first postconviction motion,[7] Anderson pointed in particular to the testimony of his first trial counsel at the hearing on his presentencing motion to withdraw his pleas: "I would have told him most likely, because I tell every client this, that if you plead guilty it's not likely you're going to get the maximum because from a public policy perspective the judges typically don't do that because otherwise no one would plead guilty[.]" Anderson asserts that, based on his discussions with counsel, he believed he "would probably receive around [fifteen] years in prison" and that he "relied on this number" when he entered his pleas. He then alleges that

---

[7]  In support of this argument on appeal, Anderson also points to his own testimony at the hearing on his presentence motion to withdraw his pleas, in which he stated that trial counsel had advised him "that [Judge] Stark wouldn't have gave [sic] me all that time if I plead guilty on all of this." However, Anderson did not include a reference to that testimony in his postconviction motion, and our review is limited to "the four corners" of the postconviction motion. *See State v. Allen*, 2004 WI 106, ¶27, 274 Wis. 2d 568, 682 N.W.2d 433.

he "would not have pled guilty if he thought that receiving the maximum penalty was a possibility."

¶36   That allegation is conclusory.  Had Anderson gone to trial, the trial court noted that he would have faced 105 years of incarceration if convicted on all counts—essentially a *de facto* life sentence.  Anderson fails to explain why he would have insisted on going to trial and face an additional sixty-five years of incarceration, as compared to the forty years he faced under the plea agreement.  *See Allen*, 274 Wis. 2d 568, ¶23.

¶37   Therefore, Anderson did not sufficiently plead his claim of ineffective assistance of counsel to demonstrate that he is entitled to relief.  *See id.*, ¶14. Accordingly, the trial court did not err in denying the claim without a hearing.  *See id.*, ¶9.

*Sentencing Claims*

¶38   Finally, we review Anderson's claims relating to sentencing.[8] Anderson alleges that the trial court erred by not allowing his new trial counsel the opportunity to "meaningfully" argue that Anderson's decision to plead guilty was a mitigating factor for sentencing, and that the court improperly relied on Anderson's race in imposing his sentence when it referenced the number of homicides that occur in the community.

¶39   "It is a well-settled principle of law that a [trial] court exercises discretion at sentencing." *State v. Gallion*, 2004 WI 42, ¶17, 270 Wis. 2d 535, 678

---

[8] In his appeal, Anderson does not renew his argument set forth in his first postconviction motion that his sentence was unduly harsh and excessive.  "On appeal, issues raised but not briefed or argued are deemed abandoned." *State v. Ledger*, 175 Wis. 2d 116, 135, 499 N.W.2d 198 (Ct. App. 1993).

N.W.2d 197. Our review on appeal is limited to determining whether that discretion was erroneously exercised. *See id.*

¶40    In making a sentencing determination, the trial court must identify the objectives of the sentence, which generally include "the protection of the community, punishment of the defendant, rehabilitation of the defendant, and deterrence to others." *Id.*, ¶40. To meet these objectives, the court must consider "'legally relevant factors.'" *State v. Odom*, 2006 WI App 145, ¶7, 294 Wis. 2d 844, 720 N.W.2d 695 (citation omitted). The primary factors for consideration are "the gravity of the offense, the character of the offender, and the public's need for protection." *Id.* It is also within the court's discretion to consider other relevant factors, and to determine the weight given to the factors considered. *Id.* Other factors the court may consider include the defendant's "'remorse, repentance and cooperativeness[.]'" *State v. Harris*, 2010 WI 79, ¶28, 326 Wis. 2d 685, 786 N.W.2d 409 (citations omitted).

¶41    Anderson's claim that the trial court did not allow the opportunity to argue that factor stems from the heated exchange between the court and his new counsel during the sentencing hearing relating to the "credit" counsel asserted Anderson should be given for pleading guilty, as previously described. It is clear from the transcript that the court disagreed with counsel's assertion that "great weight" should be afforded Anderson's guilty pleas, given that Anderson had tried to withdraw his pleas prior to sentencing. The trial court deemed that motion a "specious stunt," observing that Anderson had likely only pled guilty because he found out that the State's "reluctant witnesses" were "either available or in custody being held to testify," and then sought to withdraw his pleas after those witnesses "were long gone."

¶42 Nevertheless, counsel was able to make his point that the trial court had reviewed the plea hearing transcript where Anderson admitted to being the shooter, and further noted that even the prosecutor had stated that Anderson had admitted to the facts in the case. Therefore, we conclude that the trial court did not prevent counsel from making the argument that Anderson had accepted responsibility for the crimes.

¶43 Furthermore, a trial court may elaborate on the sentencing factors it considered in postconviction decisions. *See* **State v. Fuerst**, 181 Wis. 2d 903, 915, 512 N.W.2d 243 (Ct. App. 1994). Here, the trial court noted in its decision denying Anderson's supplemental postconviction motion:

> While the court recognized that [Anderson] deserved credit for pleading guilty, that credit was totally eroded by other circumstances: (1) he pled guilty to a significantly amended offense; (2) he pled guilty only when he knew that the State had reluctant witnesses either available or in custody being held to testify; (3) he only accepted responsibility to a lesser charge knowing that a conviction on the original charge would likely amount to a *de facto* life sentence; (4) he attempted to withdraw his plea[s] prior to sentencing based on disingenuous claims about his attorney's performance and his understanding of the plea.

The court also pointed out that Anderson was "belligerent" during the hearing on his presentence motion to withdraw his pleas, and was removed from the courtroom due to an outburst of profanity.

¶44 Thus, the record indicates that the trial court recognized that Anderson had pled guilty, and explained its reasoning for the limited weight that it afforded that decision, which is properly within its discretion. *See* **Odom**, 294 Wis. 2d 844, ¶7.

¶45 Turning to Anderson's claim that the trial court improperly relied on Anderson's race as a factor in imposing his sentence, the law is clear that race is an improper factor to consider at sentencing and, as such, imposing a sentence based on race is therefore an erroneous exercise of discretion. *See Harris*, 326 Wis. 2d 685, ¶33. A defendant must prove by clear and convincing evidence that the trial court actually relied on this improper factor at sentencing. *Id.*, ¶34.

¶46 Anderson has not met this burden. The comment in which the trial court referred to race was part of its discussion regarding violent crime in the City of Milwaukee: "[t]he average homicide in this city is so frequent that no one cares, and the average homicide is one black male shooting another black male." When reviewed in its full context, the court's comments reflected its "dismay" at the high level of homicides in the city—which has "disproportionately victimized" the Black community—and the need for society as a whole to respond to the issue.

¶47 Furthermore, the trial court explained the factors it was relying on to achieve its sentencing objectives. This included Anderson's extensive criminal history, for which the court characterized him as "a menace to society" from which the community needed protection, noting that the charges in this case "signaled an alarming escalation in criminality" on Anderson's part. The court also emphasized that punishment for "one [of] the most aggravated, heinous, senseless homicides" that the court had ever presided over was one of its main sentencing goals. *See Gallion*, 270 Wis. 2d 535, ¶40.

¶48 Therefore, we conclude that the trial court did not erroneously exercise its discretion during sentencing, nor did it rely on improper factors. Accordingly, Anderson's request for resentencing was properly denied. *See id.*, ¶¶17, 40; *Odom*, 294 Wis. 2d 844, ¶7.

**CONCLUSION**

¶49    In sum, we reverse and remand this matter to the trial court for an evidentiary hearing on Anderson's claim of newly discovered evidence.  However, we affirm the trial court's decision denying his claim of ineffective of counsel and his request for resentencing.

*By the Court.*—Order affirmed in part, reversed in part, and cause remanded with directions.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.